USDC SCAN INDEX SHEET

















CAG   1/19/06   10:08

3:04-CV-02022   SERMON V. LA MESA CITY OF

*135*

*TRLBR.*

ORIGINAL

DALEY & HEFT, LLP, ATTORNEYS AT LAW
MITCHELL D. DEAN, ESQ. (#128926)
SHIVA ELIHU, ESQ. (#215012)
462 STEVENS AVENUE, SUITE 201
SOLANA BEACH, CA 92075
TELEPHONE:  858-755-5666
FACSIMILE:  858-755-7870

Attorneys for Defendants
CITY OF LA MESA and VINCE BROWN

FILED

JAN 17 2006

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PAMELA SERMON,<br><br>                    Plaintiff,<br><br>     v.<br><br>CITY OF LA MESA, VINCE BROWN,<br>MARK BECKER and DOES 3<br>through 50, inclusive,<br><br>                    Defendants. | Case No. 04 CV 2022 DMS (RBB)<br><br>(San Diego Superior Court<br>Case No. GIE023770)<br><br>**TRIAL BRIEF OF DEFENDANTS<br>CITY OF LA MESA AND VINCE<br>BROWN**<br><br>**COURTROOM:  10**<br>**JUDGE:        Dana M. Sabraw**<br>**TRIAL:        January 23, 2006**<br><br>**Complaint filed: 9/22/04** |

///

///

///

///

///

///

///

///

///

///

135

1

## TABLE OF CONTENTS

2
**Page**

3 1.   FACTUAL BACKGROUND . . . . . . . . . . . . . . . . . . 2

4      A.   Defendants' Version . . . . . . . . . . . . . . 3

5      B.   Plaintiff's Version . . . . . . . . . . . . . . 6

6 2.   LEGAL FRAMEWORK  . . . . . . . . . . . . . . . . . 7

7      A.   Plaintiff Will be Unable to Sustain Her 42 U.S.C.
            Section 1983 Constitutional Violations, Unlawful
8           Search and Seizure and Excessive Force Cause of
            Action Against BROWN . . . . . . . . . . . . . . 7
9
            (1)  Constitutional Claims Against Officer BROWN  . 8
10
            (2)  Arrest of Plaintiff and Use of Force by
11               BROWN  . . . . . . . . . . . . . . . . . . 9

12               (a)  Probable Cause has Been Established
                      Justifying BROWN's Seizure of Plaintiff . 9
13
                 (b)  No Warrant Was Required to Detain/Arrest
14                    Plaintiff . . . . . . . . . . . . . . 10

15               (c)  Elements Required for "Supervisory
                      Liability" . . . . . . . . . . . . . 11
16
                 (d)  BROWN at No Time Used Excessive Force on
17                    Plaintiff . . . . . . . . . . . . . . 12

18          (3)  BROWN at No Time Searched Plaintiff's Room
                 and/or Residence . . . . . . . . . . . . . 13
19
            (4)  BROWN is Immune from Liability . . . . . . . 14
20
       B.   The Court Dismissed Plaintiff's Second Cause of
21          Action Against the CITY Under 42 U.S.C.A. Section
            1983, Unlawful Policies, Customs, or Habits . . . 16
22
       C.   Negligence  . . . . . . . . . . . . . . . . . 17
23
       D.   Battery . . . . . . . . . . . . . . . . . . 18
24
       E.   False Arrest  . . . . . . . . . . . . . . . . 18
25
       F.   Civil Code Section 52.1 . . . . . . . . . . . . 18
26
3.   DAMAGES  . . . . . . . . . . . . . . . . . . . . 19

27

28

# TABLE OF AUTHORITIES

**Federal Cases**

Anderson v. Creighton
  (1987) 483 U.S. 635, 638 . . . . . . . . . . . . . . . . . 15

Blair v. City of Pomona
  (9th Cir. 2000) 223 F.3d 1074, 1081 . . . . . . . . . . . 17

Graham v. Connor
  (1989) 490 U.S. 386, 397, 109 S.Ct. 1865 . . . . . . 12, 15

Harlow v. Fitzgerald
  (1982) 457 U.S. 800, 818, 102 S.Ct. 2727 . . . . . . . . 15

Hays v. Jefferson County
  (6th Cir. 1982) 668 F.2d 869 . . . . . . . . . . . . . . 11

Hildebrandt v. Illinois Dept. of Natural Resources
  (2003) 347 F.3d 1014, 1039 . . . . . . . . . . . . . . . 12

LaLonde v. County of Riverside
  (9th Cir. 2000) 204 F.3d 947, 959 . . . . . . . . . . . . 12

Leer v. Murphy
  (9th Cir. 1988) 844 F.2d 628, 632-33 . . . . . . . . . . . 8

Medrano v. City of Los Angeles
  (9th Cir, 1992) 973 F.2d 1499, 1504 . . . . . . . . . . 12

Monell v. New York City Dept. of Soc. Services
  (1978) 436 U.S. 658 . . . . . . . . . . . . . . . . . . . 2

Saucier v. Katz
  (2001) 533 U.S. 194, 200, 121 S. Ct. 2151 . . . . . . 15, 16

Smith v. City of Fontana
  (9th Cir. 1987) 818 F.2d 1411, 1416 . . . . . . . . . . . 12

United States v. Santana
  (1976) 427 U.S. 38 . . . . . . . . . . . . . . . 10, 11, 14

**State Cases**

Ann M. v. Pacific Plaza Shopping Center
  (1993) 6 Cal.App.4th 666 . . . . . . . . . . . . . . . . 17

People v. Burgess
  (1947) 79 Cal.App.2d 174, 176 . . . . . . . . . . . . . . 10

People v. Ramey
  (1976) 16 Cal.3d 263, 276 . . . . . . . . . . . . . . . . 10

///

**Federal Statutes**

42 U.S.C. section 1983  . . . . . . . . . . . . . . 2, 7, 8, 16

**State Statutes**

Civil Code section 52.1 . . . . . . . . . . . . . . 2, 18, 19

Penal Code section 647(f) . . . . . . . . . . . . . . . .   13

Penal Code section 836(a)(1)  . . . . . . . . . . . . . .   10

Penal Code section 837.1  . . . . . . . . . . . . . . . .   10

1   CITY OF LA MESA ("CITY") and Sergeant VINCE BROWN

2   ("BROWN") (hereinafter "defendants") submit the following trial

3   brief to address their theory of the case and what the evidence

4   is expected to show.  Based on the court's ruling on

5   defendants' Motion for Summary Judgment, Mark Becker has been

6   dismissed from this case and is no longer a named defendant.

7   Plaintiff, PAMELA SERMON, accuses La Mesa police officers

8   of violating her civil rights via excessive force and unlawful

9   search.  She has sued the CITY OF LA MESA and Sergeant VINCE

10   BROWN alleging causes of action for civil rights violations

11   pursuant to (1) 42 U.S.C. section 1983 (BROWN); and state law

12   counts of (3) negligence (BROWN and CITY);(4) battery (BROWN

13   and CITY); and (6) Civil Code section 52.1 (BROWN and CITY).

14   As a result of defendants' Motion for Summary Judgment the

15   Court in its October 4, 2005, ruling, granted defendants'

16   Motion for Summary Judgment with regard to plaintiff's Second

17   and Fifth causes of action (Unlawful Policies, Customs or

18   Habits (Monell) and false arrest).  This court has also found

19   that there was probable cause for BROWN to arrest plaintiff for

20   being drunk in public.

21                                **1.**

22                      **FACTUAL BACKGROUND**

23   On April 24, 2004, at approximately 4:04 a.m., plaintiff,

24   PAMELA SERMON, was detained/arrested for being drunk in public

25   while in front of her apartment located at 4261 Lowell Avenue,

26   #7, in La Mesa, California.  The evidence will show that while

27   taking plaintiff into custody, plaintiff disobeyed police

28   ///

1  orders and physically resisted arrest, which caused her own

2  right humerus to fracture.

3  **A.    Defendants' Version**

4       At the time of the incident, plaintiff lived at the

5  apartment with her two adult children, Shire and Selina Cain,

6  and Shire's girlfriend, Katherine Pool.  The La Mesa Police

7  Department has responded to plaintiff's apartment approximately

8  11 times since August 2002 and 5 times since March 2004.  All

9  of the calls involved various types of disturbances.  On

10 April 7, 2004, approximately two weeks prior to the subject

11 incident, plaintiff was placed under citizen's arrest by her

12 landlord, for the same type of behavior, public intoxication

13 and creating a disturbance.

14      On April 24, 2004, officers of the La Mesa Police

15 Department were dispatched to 4261 Lowell Avenue, La Mesa,

16 regarding multiple disputes involving plaintiff and her adult

17 children.  Plaintiff does not dispute the multiple phone calls

18 to the La Mesa Police Department by plaintiff and or her family

19 on the night of the subject incident.  The first dispatch

20 involved a disturbance between plaintiff and her daughter,

21 Selena.  At approximately 12:00 a.m., plaintiff called the

22 police, complaining that her daughter, Selena, had shut off her

23 electricity.  For this first dispatch, Officers Becker and

24 Lawton responded to plaintiff's call.  Lawton reported

25 plaintiff as very intoxicated.  He could smell the odor of

26 alcohol on her person from a distance of approximately three

27 feet away.  He could also smell the odor of marijuana smoke.

28 Plaintiff admitted to Lawton that she was prescribed medical

---

1  marijuana and had been smoking it earlier in the evening.
2  Apparently, plaintiff's daughter, Selena, had shut off the
3  electricity in an attempt to get plaintiff to go to sleep, as
4  she was being loud and disruptive.  Officers Lawton and Becker,
5  believing they resolved the situation, eventually left
6  plaintiff's premises.

7  Later in the night, a second dispute arose between
8  plaintiff and her daughter.  Plaintiff once again called the
9  La Mesa Police Department on her daughter to report a petty
10  theft of plaintiff's television.  Officers Lawton and Becker
11  once again responded and after speaking to the parties
12  involved, felt the situation was settled and left the scene.

13  After the first two calls, as the night progressed,
14  plaintiff continued her disruptive, loud behavior.  She
15  continued talking incessantly and making loud noise.
16  Eventually, at approximately 3:00 a.m., plaintiff's son, Shire,
17  called the police.  This was the third dispatch of officers to
18  the same location on the same night (plaintiff does not dispute
19  this).  Officers BROWN and Becker initially responded to
20  Shire's call.  Eventually, Officers Lawton, Sieckman and
21  Richards responded and joined BROWN and Becker.

22  BROWN was talking with plaintiff's son outside of the
23  residence.  Plaintiff's son, Shire Cain, informed BROWN that
24  his mother had been drinking all day and playing loud music,
25  preventing him from getting sleep.  BROWN told Shire that he
26  could place his mother under citizen's arrest for disturbing
27  the peace.  At this time, plaintiff exited her
28  ///

4

1  yelling and waving papers at the officers.[1] Plaintiff walked

2  outside of her home approximately 10-15 feet away from the

3  door.  According to BROWN and Becker, plaintiff's words were

4  slurred, her eyes were red and glassy, she had an unsteady

5  gait, and appeared very drunk.  At this time, plaintiff changed

6  direction and started to walk away from BROWN.  BROWN made a

7  motion towards plaintiff, while plaintiff kept walking away.

8  BROWN directed plaintiff to stop twice.  Plaintiff failed to

9  obey the officer's orders.  As plaintiff reached the threshold

10  of her apartment door, BROWN grabbed plaintiff's right arm, by

11  her wrist, and pulled her toward him.  A portion of plaintiff's

12  body was inside the residence.  However, the portion grabbed by

13  BROWN, plaintiff's right arm, was not in the residence.  BROWN

14  was always behind plaintiff (outside of her residence) from the

15  moment of physical contact.  BROWN began to perform a wrist

16  flex (compliance hold), bringing plaintiff's right arm behind

17  her back, locking her elbow into BROWN's stomach.  Plaintiff

18  began to violently flail her upper body by turning in both

19  directions (as if she were throwing a punch).  This resistance

20  caused BROWN to have impact with the wall opposite of

21  plaintiff's door. At this point, Officer Becker approached to

22  assist BROWN in controlling plaintiff.  Becker grabbed

23  plaintiff's left wrist while Sergeant BROWN continued to apply

24  a wrist flex to help control plaintiff.  Plaintiff made a

25  sudden move with her upper body toward BECKER when plaintiff's

26  ///

27

28

[1] According to plaintiff, she was waving eviction papers to evict
her children from the residence.

1 arm broke.  Witnesses will confirm that plaintiff was moving

2 her arms and shoulders and appeared to be resisting arrest.

3      Immediately after the subject incident, various officers

4 of the La Mesa Police Department took the statements of various

5 witnesses.  Specifically, the statements of plaintiff's

6 children, Shire and Selena Cain were taken.  At the time the

7 statements were taken, plaintiff's children admitted that their

8 mother was drinking all day, was a disturbance to the

9 neighborhood, and was resisting arrest.  However, they later

10 changed their testimony at their depositions.

11 **B.   Plaintiff's Version**

12      Plaintiff claims that on the night of the incident she was

13 not intoxicated.  According to plaintiff, throughout the night

14 she consumed a total of four beers (photographs taken of

15 plaintiff's room after the subject incident indicate a total of

16 ten opened beer bottles/cans strewn about the floor of

17 plaintiff's bedroom).  Moreover, plaintiff denies telling any

18 officer that she had smoked marijuana earlier in the evening.

19 According to plaintiff's deposition, she did not recall whether

20 or not she had smoked any marijuana prior to the incident.

21      Plaintiff alleges that on the night of the incident, she

22 stepped outside of her residence (approximately 2-3 feet

23 outside of the front door).  At this point, she realized that

24 she did not have the correct eviction file materials.  So, she

25 turned around, and headed back toward her residence.  According

26 to plaintiff, she did not hear any commands from any officers

27 for her to stop, nor did any officer tell her she was under

28 arrest.  Plaintiff claims that when she was approximately

6

1  2-3 feet inside her residence, she felt someone physically
2  touching her arm.   At this point, according to plaintiff, she
3  was spun around by the officer and "flung" 12 feet against the
4  wall opposite her front door, outside of her residence.
5  Plaintiff said she bounced off of the wall.   But her arm broke
6  when BROWN twisted her arm behind her back.   Plaintiff then
7  began screaming that the officer had broken her arm.

8                                **2.**

9                          **LEGAL FRAMEWORK**

10      The main issues are excessive force and various state
11  causes of action relating to BROWN's actions in effectuating
12  the arrest of plaintiff and his application of the wrist
13  compliance hold.   Since the evidence will show that at no time
14  on the date of the incident did BROWN step foot into
15  plaintiff's residence, plaintiff's claims of  unlawful entry
16  into her residence are without merit.   Similarly the issue of
17  probable cause for plaintiff's seizure is not at issue as the
18  Court found that BROWN had the requisite probable cause to
19  arrest the plaintiff for public intoxication.

20      With regard to the wrist compliance hold, the evidence
21  will show that BROWN applied the hold properly and in the
22  manner that he was trained to apply it.

23  **A.   Plaintiff Will be Unable to Sustain Her 42 U.S.C. Section
        1983 Constitutional Violations, Unlawful Search and**
24      **Seizure and Excessive Force Cause of Action Against BROWN**

25      In her first cause of action, plaintiff alleges that:

26      Defendants used unreasonable, unjustified and
        unnecessary use of force upon Plaintiff ... Plaintiff
27      was unlawfully detained and thus unlawfully seized by
        defendants without a warrant or probable cause.
28      Thus, plaintiff suffered unlawful seizure in
        violation of her constitutional rights as guaranteed

                                  7

1  by the Fourth Amendment to the United States
2  Constitution.

3  **(1)   Constitutional Claims Against Officer BROWN**

4  For individual police officer liability for a 42 U.S.C.

5  section 1983, plaintiff must prove:  (1) that a person acting

6  under color of state law, (2) committed an act that deprived

7  the plaintiff of some right, privilege or immunity protected by

8  the Constitution or laws of the United States.  (Leer v. Murphy

9  (9th Cir. 1988) 844 F.2d 628, 632-33.)

10  This case revolves around the second element, whether the

11  use of force against plaintiff deprived plaintiff of rights

12  guaranteed by the Fourth Amendment of the United States

13  Constitution.

14  Plaintiff contends that BROWN violated plaintiff's

15  constitutional rights as guaranteed by the Fourth Amendment of

16  the Constitution when he unlawfully seized plaintiff inside her

17  house without a warrant.  Plaintiff further alleges BROWN used

18  unreasonable, unjustified and excessive force upon plaintiff in

19  violation of plaintiff's Fourth Amendment rights.

20  Specifically, within her First Amended Complaint, plaintiff

21  asserts that while she was inside her residence, Officer BROWN

22  grabbed plaintiff by her right upper arm, pulling her out of

23  the residence in a violent fashion.  Plaintiff further alleges

24  that prior to BROWN's physical contact with plaintiff, there

25  were no officer commands for plaintiff to halt.  According to

26  plaintiff, her residence and private bedroom were entered by

27  Officer Lawton of the La Mesa Police Department, after her arm

28  ///

1 broke, without her permission, probable cause, and/or a
2 warrant.

3     As stated, plaintiff's bedroom was entered by Officer
4 Shawn Lawton, not Sergeant VINCE BROWN.  Lawton is not a named
5 defendant in this lawsuit.  Plaintiff is attempting to attach
6 liability to BROWN for Lawton's action via "supervisory
7 liability."  Nonetheless, even if supervisory liability was
8 asserted by plaintiff (which it was not), it is not applicable
9 in this case (see discussion below).

10     Since BROWN is the only remaining named defendant, only
11 the actions of BROWN will be relevant at trial, supervisory
12 liability will not apply in this case.  The evidence will show
13 that BROWN, at no time, engaged in any action that violated any
14 portion of the Constitution.  However, even if a constitutional
15 violation is shown, Officer BROWN is immune from liability
16 under the doctrine of qualified immunity because he reasonably
17 believed the use of force and subsequent arrest/ detention of
18 plaintiff was reasonable and constitutional under the
19 circumstances.

20     **(2)   <u>Arrest of Plaintiff and Use of Force by BROWN</u>**

21         **(a)   <u>Probable Cause has Been Established Justifying
            BROWN's Seizure of Plaintiff</u>**
22

23     As discussed, the Court in its October 4, 2005, ruling
24 found that BROWN had probable cause to arrest plaintiff.
25 Therefore, the Court granted defendants' Motion for Summary
26 Judgment with regard to plaintiff's fifth, false arrest cause
27 of action finding plaintiff's seizure to have been reasonable.
28 ///

9

1          **(b)   No Warrant Was Required to Detain/Arrest**
                   **Plaintiff**
2

3          The Fourth Amendment of the Constitution provides that:

4          [T]he right of the people to be secure in their
           persons, houses, papers, and effects, against
5          unreasonable searches and seizures, shall not be
           violated, and no warrants shall issue, but upon
6          probable cause, supported by oath or affirmation, and
           particularly describing the place to be searched and
7          the persons or things to be seized.

8          For a misdemeanor arrest (public intoxication), an officer

9    may make an arrest at any time of the day or night, in a public

10   place, without a warrant.  However, the misdemeanor must have

11   occurred in the officer's presence.  (Penal Code, §836(a)(1),

12   837.1.)  "In the presence" is commonly interpreted to refer to

13   having personal knowledge that the offense in question has been

14   committed, made known to the officer through any of the

15   officer's five senses.  (See, People v. Burgess (1947) 79

16   Cal.App.2d 174, 176.)

17         Plaintiff contends that officers arrested plaintiff while

18   she was back inside her residence and therefore a warrant was

19   required.  (People v. Ramey (1976) 16 Cal.3d 263, 276.)

20   Defendants contend plaintiff was at the threshold of her door

21   when she was initially contacted by BROWN.  Regardless, under

22   either scenario, a warrant was not required.  There are several

23   exceptions to the requirement that a warrant be issued for an

24   arrest inside a person's home.  The most applicable exception

25   to the facts of our case is the threshold exception.  (United

26   States v. Santana (1976) 427 U.S. 38.)

27         The facts of our case could not be more directly on point

28   to Santana.  Similar to Santana, BROWN had probable cause to

                                    10

1   arrest plaintiff.  Moreover, the instant case is strengthened

2   by the fact that not only was plaintiff initially at her

3   threshold, she stepped out of her residence, at least three

4   feet, into the apartment complex's public courtyard (common

5   area).  According to <u>Santana</u>, the courtyard area in our case

6   would be even more public as the threshold area in Santana, as

7   plaintiff was "not in an area where she had any expectation of

8   privacy and was not merely visible to the public (her

9   neighbors) but was exposed to public view, speech, hearing, and

10  touch as if she had been standing completely outside her house"

11  (in fact, plaintiff in our case was actually standing

12  completely outside of her house).  (<u>Id</u>.)  Once plaintiff

13  changed directions and headed toward her house, she could not

14  thwart an otherwise proper arrest that had been set in motion

15  in a public place.  (<u>Id</u>.)

16       Based on the threshold exception to the warrant

17  requirement, it is clear that a warrant was not required for

18  plaintiff's arrest.  Moreover, since the evidence will show

19  that at no time did BROWN enter plaintiff's residence on the

20  night of the subject incident, there can be no Constitutional

21  violation for unlawful search by BROWN.

22            **(c)   <u>Elements Required for "Supervisory Liability"</u>**

23       For BROWN to be liable for Lawton's search of plaintiff's

24  bedroom, BROWN's simple negligence is not enough.  Gross

25  negligence or deliberate indifference is required for

26  supervisory liability.  (<u>Hays v. Jefferson County</u> (6th Cir.

27  1982) 668 F.2d 869.)  A supervisor satisfies personal

28  responsibility requirement for liability under 1983 if the:

<u>11</u>

> [C]onduct causing the constitutional deprivation occurs at supervisor's direction or within supervisor's knowledge and consent; that is supervisor must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye.

(<u>Hildebrandt v. Illinois Dept. of Natural Resources</u> (2003) 347 F.3d 1014, 1039.  In accord, <u>Medrano v. City of Los Angeles</u> (9th Cir, 1992) 973 F.2d 1499, 1504.)

In the case at bar, the evidence will show that BROWN neither directed Lawton to search and photograph plaintiff's bedroom nor did he know about it until afterwards.  BROWN told Lawton to interview witnesses.  Lawton, on his own, and upon Selena Cain's suggestion, entered the bedroom and took pictures.

**(d)   BROWN at No Time Used Excessive Force on Plaintiff**

Plaintiff is also claiming the amount of force used by BROWN in arresting plaintiff was excessive and unreasonable.  A claim of excessive force is analyzed under a reasonableness standard.  (<u>Graham v. Connor</u> (1989) 490 U.S. 386.)  When making an arrest, police can only use the amount of force that is objectively reasonable under the circumstances.  (<u>LaLonde v. County of Riverside</u> (9th Cir. 2000) 204 F.3d 947, 959.)  Three factors are used to analyze the reasonableness of force: (1) the requirements for the officers' safety, (2) the motivation for the arrest, and (3) the extent of the injury inflicted.  (<u>Smith v. City of Fontana</u> (9th Cir. 1987) 818 F.2d 1411, 1416.)

Using these three factors, the evidence will show that reasonable force was used in this case.  Analysis of the first

12

1 factor includes requirements for the officers' safety.  Here,
2 the officers had responded to plaintiff's residence for the
3 third time this evening.  Numerous witnesses described
4 plaintiff as disruptive loud, intoxicated, uncooperative.
5 Officers observed symptoms of plaintiff's intoxication.  In
6 fact, plaintiff admitted that she had smoked marijuana earlier
7 in the evening and had been drinking.

8     The second factor looks to the motivation for the arrest.
9 Here, the arrest was for public intoxication pursuant to Penal
10 Code section 647(f).  Because the plaintiff was uncooperative,
11 combative, displayed symptoms of intoxication and this was the
12 third dispatch to this location on the same evening, BROWN had
13 ample motivation to arrest plaintiff.  (This Court agreed.)

14     Finally, the third factor examines the extent of the
15 plaintiff's injuries.  Plaintiff only injured her arm as a
16 result of the incident.  Plaintiff's injury was not life-
17 threatening.  Officers immediately called an ambulance for
18 plaintiff.  Plaintiff immediately received medical attention.
19 Further, the injury would not have occurred but for plaintiff's
20 uncontrollable, aggressive behavior.  Based on the above, in
21 conjunction with analysis of the first two factors, the extent
22 of plaintiff's injuries were not serious enough to render the
23 officers' actions unreasonable under the circumstances.

24     **(3)   BROWN at No Time Searched Plaintiff's Room and/or**
            **Residence**
25

26     Plaintiff alleges that her residence and private bedroom
27 were entered by the officers without permission, probable
28 cause, and/or a warrant.  Plaintiff does not allege that BROWN

1   was the officer that entered her residence and private bedroom.

2   BROWN's only alleged search of plaintiff's residence relates to

3   his alleged brief entrance into plaintiff's residence when he

4   first made contact with plaintiff to effectuate her arrest.

5   However, please note plaintiff herself testified that no

6   officers entered her residence prior to her arm breaking.

7   Therefore, the evidence will show that at no time did BROWN

8   enter plaintiff's residence on the night of the incident.  He

9   remained outside of the residence when he first made physical

10  contact with plaintiff.  Thus, there is no constitutional

11  violation by BROWN for unlawful search.  Even if BROWN did

12  momentarily enter plaintiff's residence when he first made

13  contact with plaintiff, this entrance was justified and lawful

14  based on the Santana case, discussed above.

15      The only officer to enter plaintiff's bedroom was Officer

16  Lawton.  There will be no evidence that Sergeant BROWN knew of

17  the entry, ordered the entry, encouraged the entry or stood by

18  while the entry occurred.  Therefore, Sergeant BROWN cannot be

19  liable for Lawton's entry.

20      Based on the aforementioned, it is clear that Sergeant

21  BROWN did not violate any of plaintiff's constitutional rights.

22  However, even if we assume a constitutional violation for the

23  sake of argument, BROWN will nonetheless assert the defense of

24  qualified immunity.

25      **(4)   BROWN is Immune from Liability**

26      The purpose and application of qualified immunity is well-

27  established.  Qualified immunity exists to protect public

28  officials from suits alleging violations of federal

14

1  constitutional rights.  (<u>Anderson v. Creighton</u> (1987) 483 U.S.

2  635, 638.)  Qualified immunity is designed to protect police

3  officers for their conduct in situations requiring the exercise

4  of discretion.  Qualified immunity recognizes that police

5  officers must make instantaneous decisions in dangerous,

6  complex and fast-moving situations without the benefit or

7  luxury of hindsight.  (<u>Graham v. Connor</u> (1989) 490 U.S. 386,

8  397, 109 S.Ct. 1865; <u>Harlow v. Fitzgerald</u> (1982) 457 U.S. 800,

9  818, 102 S.Ct. 2727.)

10      The situation at hand is exactly the type of situation in

11  which qualified immunity comes into play.  Officers responded

12  to the subject location on three separate occasions on the same

13  evening, all due to plaintiff's disruptive behavior.  Plaintiff

14  ignored officers' numerous requests that she stop and was

15  uncooperative and combative with BROWN when he attempted to

16  place her in a compliance hold.  Plaintiff, by flailing her

17  body and forcing BROWN to strike the adjacent wall and forcing

18  both officers into nearby shrubbery, jeopardized the safety of

19  Becker and BROWN.  Therefore, to effectuate plaintiff's arrest

20  and cause an end to plaintiff's continuous disruptive behavior,

21  BROWN had to make instantaneous decisions regarding the amount

22  of force used, and when and how to arrest plaintiff.

23      The main issue in this litigation involves BROWN's

24  application of the wrist compliance hold.  The evidence will

25  show that BROWN is entitled to qualified immunity for his

26  physical actions in applying the compliance hold.  There are

27  three steps in determining qualified immunity pursuant to the

28  case of <u>Saucier v. Katz</u> (2001) 533 U.S. 194, 200, 121 S. Ct.

<hr>

15

1  2151; (1) the officers conduct violated a constitutional right,

2  (2) that this right was clearly established, and (3) whether it

3  would be clear to a reasonable officer that his conduct was

4  unlawful in the situation confronted.  (Id.)

5      Assuming for the sake of discussion that BROWN did violate

6  a clearly established right, it would not be clear to a

7  reasonable officer that BROWN's conduct was unlawful in the

8  situation.  During the subject incident, BROWN used a

9  compliance hold he had applied many times in the past without

10  incident; he has been trained in the proper use of the

11  compliance hold; the compliance hold is a commonly used tactic

12  and is approved by P.O.S.T.; and he applied the wrist

13  compliance hold in the manner that he was trained to apply it

14  (none of these facts disputed by plaintiff).  It cannot be said

15  that it was clear to BROWN that "his conduct was unlawful in

16  the situation he confronted."  (Id.)  Therefore, BROWN is

17  entitled to qualified immunity for his brief physical actions

18  in effectuating the arrest of plaintiff, even if plaintiff

19  broke her arm.

20      Based on the aforementioned, BROWN's use of force was

21  reasonable and necessary under the circumstances, thereby

22  rendering him immune from liability.

23  **B.   The Court Dismissed Plaintiff's Second Cause of Action**
       **Against the CITY Under 42 U.S.C. Section 1983, Unlawful**
24     **Policies, Customs, or Habits**

25      The Court in its October 4, 2005, ruling granted

26  defendants' Motion for Summary Judgment as to plaintiff's

27  second cause of action, finding that plaintiff failed to

28  present any relevant evidence to support her allegations that

1   unconstitutional policies exist.   Therefore evidence relating

2   to training/policies of the CITY are irrelevant for our

3   purposes.

4   **C.   Negligence**

5       Plaintiff's third cause of action is for negligence.

6   Plaintiff has named the CITY and Officer BROWN as defendants in

7   this cause of action.

8       Plaintiff attempts to attach liability to the CITY through

9   the actions of the individual officers based on the concept of

10  respondeat superior and for the CITY's alleged negligent

11  training, hiring and supervision of its officers.[2]

12      For the CITY to be liable under respondeat superior the

13  officers negligence must be shown.   As discussed above,

14  plaintiff will be unable to show that the officers, in any way,

15  acted negligently.

16      With regard to a negligence claim against BROWN, plaintiff

17  must prove that BROWN owed the plaintiff a legal duty, that he

18  breached that duty, and that the breach was the

19  proximate or legal cause of the damages alleged by the

20  plaintiff.   (Ann M. v. Pacific Plaza Shopping Center (1993) 6

21  Cal.App.4th 666.)

22  ///

23

24

25  [2]  With regard to plaintiff's claim that the CITY negligently
    trained, hired and supervised its officers, this court in its
26  January 19, 2005, ruling found that "California does not recognize
    a cause of action against public entities for negligent hiring,
    training, retention or supervision.  (See Blair v. City of Pomona
27  (9th Cir. 2000) 223 F.3d 1074, 1081.)  (See footnote 2 of Court's
    order.)  Moreover, BROWN cannot be liable for negligent training
28  as plaintiff's First Amended Complaint only lists the CITY OF
    LA MESA as a defendant for this particular claim.

                                 17

1      As discussed in section one above, under the facts of this

2 particular case, BROWN acted reasonably given plaintiff's

3 continued, uncontrollable, non-cooperative irrational behavior.

4 Prior efforts by officers, earlier in the evening, in

5 attempting to manage/control plaintiff's disruptive behavior

6 without an arrest proved ineffective.  As such, BROWN acted

7 reasonably in arresting plaintiff on the third dispatch.

8 Further, the amount of force used was reasonable due to

9 plaintiff's resistance and failure to follow multiple police

10 orders.  Since BROWN' s actions were reasonable under the

11 circumstances, it follows that the CITY cannot be liable under

12 respondeat superior.  Therefore, plaintiff's negligence cause

13 of action is without merit.

14 **D.   Battery**

15      Plaintiff's fourth cause of action is for battery.  The

16 analysis discussed in section one above regarding claims of

17 excessive force is applicable to plaintiff's battery cause of

18 action.  Once again, based on the circumstances, BROWN's

19 actions were reasonable under the circumstances.

20 **E.   False Arrest**

21      Plaintiff's fifth cause of action is for false arrest.  As

22 discussed above, the Court dismissed plaintiff's fifth cause of

23 action finding plaintiff's seizure to have been reasonable.

24 **F.   Civil Code Section 52.1**

25      Plaintiff's final and sixth cause of action is under

26 California Civil Code section 52.1.  Plaintiff seeks to recover

27 damages for her alleged constitutional rights violations.

28 Civil Code section 52.1(a) provides:

If a person or persons, whether or not acting under color of law, interferes by threats, intimidation, or coercion, or attempts to interfere by threats, intimidation, or coercion, with the exercise or enjoyment by any individual or individuals of rights secured by the Constitution or laws of the United States, or of the rights secured by the Constitution or laws of this state, the Attorney General, or any district attorney or city attorney may bring a civil action for injunctive and other appropriate equitable relief in the name of the people of the State of California, in order to protect the peaceable exercise or enjoyment of the right or rights secured. An action brought by the Attorney General, any district attorney, or any city attorney may also seek a civil penalty of twenty-five thousand dollars ($25,000). If this civil penalty is requested, it shall be assessed individually against each person who is determined to have violated this section and the penalty shall be awarded to each individual whose rights under this section are determined to have been violated.

As discussed above, none of plaintiff's constitutional rights have been interfered with or violated.  BROWN, at all times, acted lawfully and followed proper police procedure with his dealings with plaintiff.  As such, plaintiff is not entitled to California Civil Code section 52.1 damages.

### 3.

#### DAMAGES

Plaintiff's only injury as a result of the subject incident was to her arm.  According to plaintiff's doctor, Peter Hanson, "his strong opinion was that the humerus was now completely healed and that there was absolutely no indication of an incomplete union."  This statement is important because it directly disputes plaintiff's claims that she will require future surgery or has suffered a permanent injury thereby precluding plaintiff from working in the future.

///

1    Plaintiff is also claiming a loss of earnings as a result

2  of the subject incident.  Defendants assert that at the time of

3  the accident, plaintiff was on disability and unemployed and

4  therefore has no loss of earnings.

5                              Respectfully submitted,

6  Dated:  January _16_, 2006   DALEY & HEFT, LLP

7

8                              By: _____

9                                  MITCHELL D. DEAN
                                   SHIVA ELIHU
10                                 Attorneys for Defendants
                                   CITY OF LA MESA and
11                                 VINCE BROWN

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

04 CV 2022 DMS (RBB)

1  DALEY & HEFT, ATTORNEYS AT LAW                    **ORIGINAL**
   ROBERT W. BROCKMAN, JR., ESQ. (#123546)
2  SHIVA ELIHU, ESQ. (#215012)
   462 STEVENS AVENUE, SUITE 201
3  SOLANA BEACH, CA 92075
   TELEPHONE:  858-755-5666
4  FACSIMILE:  858-755-7870

5  Attorneys for Defendants,
   CITY OF LA MESA, VINCE BROWN, and
6  MARK BECKER

7

8              **UNITED STATES DISTRICT COURT**

9             **SOUTHERN DISTRICT OF CALIFORNIA**

10 PAMELA SERMON,                 )    Case No. 04 CV 2022 DMS (RBB)
                                  )
11               Plaintiff,       )    (San Diego Superior Court
                                  )    Case No. GIE023770)
12      v.                        )
                                  )    **CERTIFICATE OF SERVICE BY**
13 CITY OF LA MESA, VINCE BROWN,  )    **PERSONAL SERVICE**
   MARK BECKER, and DOES 3        )
14 through 50, inclusive,         )    **COURTROOM:  10**
                                  )    **JUDGE:     Dana M. Sabraw**
15               Defendants.      )    **TRIAL:     January 23, 2006**
   ───────────────────────────────)

16

17      I, the undersigned, am employed with Advanced Attorney

18 Service, in the City of San Diego, County of San Diego,

19 California.  I am over the age of 18 years and not a party to

20 the within action.  My business address is 3500 Fifth Avenue,

21 Suite 202, San Diego, CA  92103.

22      I served the following documents:

23 **(1) TRIAL BRIEF OF DEFENDANTS CITY OF LA MESA AND VINCE BROWN,**

24 **(2) SPECIAL TRIAL BRIEF OF DEFENDANTS CITY OF LA MESA AND VINCE**

25 **BROWN ON ISSUE OF GOVERNMENT TORT CLAIM LIMITING STATE CLAIMS,**

26 **(3) JOINT TRIAL EXHIBIT LIST, (4) JOINT WITNESS LIST, (5) VOIR**

27 **DIRE QUESTIONS SUBMITTED IN WRITING; (6) JOINT JURY**

28 **INSTRUCTIONS; AND (7) DEFENDANTS' TRIAL EXHIBIT BINDER**

                           1

1    I personally served the following people at the address,

2  date, and time stated:

3  Michael R. Marrinan, Esq.
   Law Offices of Michael R. Marrinan
4  614 Fifth Avenue, Suite D
   San Diego, CA  92101
5  Tel:  619-238-6900
   Fax 619-515-0505
6  **Associated Counsel for Plaintiff PAMELA SERMON**

7  on January 17, 2006, at ___4:10___ p.m. on _____

8  _____MICHAEL MARRIAN_____ [name]

9

10   I am a registered California process server.

11   I declare under penalty of perjury under the laws of the

12 State of California that the foregoing is true and correct.

13 DATED:  January 17, 2006

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28